UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MORRIS WEATHERSPOON,

                Plaintiff,                    Case No. 2:14-cv-142

v.                                    Honorable R. Allan Edgar

JEFFREY WOODS et al.,

                Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will serve the complaint against Defendants Anderson, Brand, Brontowski, Brown, Ebert, Malletta, Niemi, Rumstead, Shaw and Stuhler, solely with respect to Plaintiff's Eighth Amendment and conspiracy claims regarding the failure to provide adequate medical care. All other claims and Defendants will be dismissed.

## Discussion

I.    Factual allegations

Plaintiff Morris Weatherspoon is incarcerated by the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility, though the events giving rise to the complaint  occurred while he was incarcerated at the Chippewa Correctional Facility (URF). Defendants are employees of URF: Warden Jeffrey Woods; Dr. (unknown) Brontowski; Physician Assistants (PAs) Michael Brand and (unknown) Malletta; Grievance Coordinators Mike McLean and Carolyn B. Nelson; Department Analyst Tracey Schroeder; Grievance Manager Richard Russel; Deputy Warden Thomas Mackie; Sergeant (unknown) Anderson; Assistant Resident Unit Manager (ARUM) Nathan Niemi; Correctional Officers (unknown) Brown, (unknown) Shaw, (unknown) Vollick, (unknown) Ebert, (unknown) Rumstead, (unknown) Knipe, (unknown) Lacoursiere, (unknown) Morse, (unknown) Shubert, and (unknown) Stuhler.

According to his *pro se* complaint, Plaintiff alleges that Officers Vollick, Rumstead, Brown, Shaw, Ebert, Knipe, Lacoursiere, Morse, Stuhler, and Shubert: "agreed" to destroy his legal and personal property during "daily/weekly" shakedowns of his cell and deliberately filed false misconduct reports to cause him to lose his prison job and remain confined to his cell.  (Compl., docket #1, Page ID#6.)  These Defendants also gave Plaintiff threatening looks, hurled insults at him regarding his appearance and faith, delayed or hindered his access to the law library, and set him up with misconducts for possession of a knife and assault so that he would be placed in segregation.

On May 17, 2012, Officers Shaw, Brown and Stuhler failed to provide Plaintiff with access to dental care.  Plaintiff alleges that he was suffering "profuse gum bleeding" and swelling at the time, and that he experienced "excruciating pain" when he ate foods and brushed his teeth.

(*Id.* at Page ID#7.)  Even though Plaintiff's need for treatment was obvious, these Defendants "withheld, denied, and disregarded the (scheduled) urgent dental care" when it was available.  (*Id.*)

On July 17, 2012, while Plaintiff was on modified grievance access, Deputy Warden Mackie refused to provide grievance forms and/or process Plaintiff's prisoner grievances, and refused to hold his subordinates responsible for their conduct.  (*Id.* at Page ID#7.)

On August 16, 2012, Sergeant Anderson, ARUM Niemi, and Officers Shaw, Rumstead and Ebert conducted a one-hour search of Plaintiff's cell.  Plaintiff contends that his left leg was in "intense pain" during this time, but Defendants withheld medical treatment while conducting the search, even though the need for treatment was obvious.  (*Id.* at Page ID#8.)  The search also resulted in the destruction of unidentified personal property.

On August 16 and 27, 2012, Defendants Dr. Brontowski and PAs Brand and Malletta "delayed, disregarded and denied" Plaintiff's need for medical care for his leg pain.  (*Id.* at Page ID#8.)

On August 21, 2012, Plaintiff was transferred to another unit. (*Id.* at Page ID#9.) The following day, Officers Morse and Shubert conducted a search of Plaintiff's cell and threatened to file false misconduct reports against him.

In December of 2011, and in May, July, August, and September of 2012, Warden Woods, Grievance Manager Russel, Grievance Coordinators McLean and Nelson, and Department Analyst Schroeder allegedly rejected Plaintiff's grievances, denied him access to grievance forms, and placed him on modified grievance access.

On September 11, 2012, Deputy Warden Mackie transferred Plaintiff to Kinross Correctional Facility (KCF), knowing that Plaintiff would be "set up" with possession of a knife[1] and then placed into segregation.  (*Id.* at Page ID#7.)

Based on the foregoing, Plaintiff claims that Defendants: conspired to violate his rights; retaliated against him for engaging in protected conduct; subjected him to inhumane treatment in violation of the Eighth Amendment and his right to due process under the Fourteenth Amendment; and/or deprived him of access to the courts and his right to seek redress through the prison grievance process.

As relief, Plaintiff seeks damages.

II.        Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although

---

[1]According to a September 16, 2012 Misconduct Report, an officer at KCF found an "8 [inch] piece of steel sharpened to a point" in Plaintiff's locker.  (Attach. to Compl., docket #1-1, Page ID#28.)

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill*

*v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1)

and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A. Retaliation

Plaintiff claims that virtually all of Defendants' actions described in the complaint

were motivated by his protected conduct, namely, his prisoner grievances and his lawsuits against

prison officials. Retaliation based upon a prisoner's exercise of his or her constitutional rights

violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was

engaged in protected conduct; (2) an adverse action was taken against him that would deter a person

of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at

least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendants' actions were motivated by any of his protected conduct.

-6-

To the extent Plaintiff claims that Defendants retaliated against him for filing lawsuits, he does not state a claim.  His complaint mentions two lawsuits, both of which were filed in this District *after* the events alleged in the complaint.  *Weatherspoon v. Toner et al.*, No. 2:13-cv-254 (W.D. Mich.) and *Weatherspoon v. Williams et al.,* No. 2:14-cv-108 (W.D. Mich.).  Defendants could not have retaliated against him in 2012 for filing lawsuits in 2013 and 2014.

Plaintiff also relies on his grievances as protected conduct, and the attachments to his complaint indicate that he filed at least twenty-five grievances while incarcerated at URF.  (*See* docket #1-1, Page ID ##50-105.)  The earliest grievance attached to the complaint was filed in January 2012, while the others were filed in April, May, June, July, and October of that year.  (*See id.*)  Plaintiff does not allege any facts from which to reasonably infer that Defendants' conduct was motivated by these grievances.  He merely concludes that because he filed some grievances within a few days, weeks or months before Defendants' actions, their actions must have been motivated by his grievances.  The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim.  *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010).  This is especially true where, as here, the plaintiff is a prolific filer of grievances.  *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews").  Plaintiff merely alleges temporal proximity between Defendants' conduct and his many grievances.  Such allegations are insufficient to state a retaliation claim.

## B.  Destruction of Property (Due Process)

Plaintiff alleges that several of the Defendants destroyed some of his property in connection with daily or weekly "shakedowns" of his cell, which the Court construes to be a claim that Defendants deprived him of property without due process.  Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (July 9, 2012).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC Policy

Directive 03.02.131 (Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court

of Claims asserting tort or contract claims "against the state and any of its departments,

commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The

Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for

deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why one

of the foregoing remedies would not afford him complete relief for the deprivation, either negligent

or intentional, of his personal property.  Accordingly, Plaintiff's due process claim regarding the

destruction of his property will be dismissed.

## C.  Access to the Courts

Plaintiff alleges that Defendants Woods, Russel, Schroeder, McLean and Nelson

rejected Plaintiff's grievances, denied him grievance forms, and placed him on modified access to

the grievance process.[2]  In addition, Defendant Mackie refused to provide grievance forms or process

unidentified grievances while Plaintiff was on modified access.  Plaintiff claims that Defendants'

actions in connection with the grievance process deprived him of access to the courts.

It is well established that prisoners have a constitutional right of access to the courts.

*Bounds v. Smith*, 430 U.S. 817, 821 (1977).  Among other things, the right of access to the courts

prohibits prison officials from erecting barriers that may impede the inmate's ability to access the

courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).  In order to state a viable claim,

however, the plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also*

---

[2]According to MDOC Policy Directive 03.02.130 (effective July 9, 2007), a prisoner "who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language. . . , or is found guilty of misconduct for filing an unfounded grievance" as set forth in Paragraph L, may have access to the grievance process limited" for a period of time.  *Id.* ¶ HH.  While on modified access, the prisoner may obtain grievance forms only through the grievance coordinator, after a determination that the issue to be grieved is grievable and otherwise satisfies MDOC policy.  *Id.* ¶ KK.

*Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, the plaintiff must plead and demonstrate that prison officials have hindered, or are presently hindering, his efforts to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 351-53. The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353.

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff does not identify an injury to a non-frivolous legal claim. Indeed, he does not identify any of the underlying claims as required by *Christopher*. He merely states that Defendants' actions in connection with the grievance process somehow thwarted, or were designed

to thwart, his access to the courts.  Such conclusory allegations do not state a viable access-to-courts claim.

### D.  Grievance Process

In a related claim, Plaintiff contends that certain Defendants deprived him of his right to pursue redress through the grievance process by rejecting his grievances and placing him on modified access to the grievance process.  Modified access does not deprive a prisoner of the ability to use the grievance process, however; instead, it requires the prisoner to seek authorization before obtaining a grievance form.  In any event, even if Defendants barred Plaintiff from using the grievance process, they did not violate his constitutional rights because Plaintiff does not have a constitutional right to file prisoner grievances.  The Sixth Circuit has indicated that the filing of grievances is constitutionally-protected conduct for which a prisoner cannot be retaliated against. *Shehee v. Luttrell*, 199 F.3d 295, 300-301 (6th Cir. 1999).  However, a prisoner has no constitutional right to any effective grievance procedures or access to any such procedure voluntarily established by the state.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991).  State law does not create a liberty interest in the grievance procedure.  *See Wilcox v. Johnson*, No. 95-1754, 1996 WL 253868, at *1 (6th Cir. May 13, 1996).  Consequently, even if Defendants deprived Plaintiff of the opportunity to seek redress through the grievance process, they did not violate any of his constitutional rights.

### E.  Medical Care

Plaintiff alleges that on May 17, 2012, Defendants Brown, Shaw and Stuhler withheld or failed to provide access to dental care even though the need for treatment was obvious.  In

addition, on August 16, 2012, Defendants Anderson, Ebert, Niemi, Rumstead and Shaw disregarded Plaintiff's need for medical care to treat pain in his leg while they were conducting a search of his cell, even though the need for treatment was obvious.  On August 16 and 27, 2012, medical staff at ICF, Defendants Brand, Brontowski and Malletta, disregarded Plaintiff's need for care to treat his leg pain.  At this stage of the proceedings, the Court concludes that the foregoing allegations suffice to state an Eighth Amendment claim against Defendants Anderson, Brand, Brontowski, Brown, Ebert, Malletta, Niemi, Rumstead, Shaw and Stuhler.

### F.  False Misconduct Reports

Several Defendants allegedly filed false misconduct reports, which caused Plaintiff to lose his job and lose access to prison rehabilitative programs because he was forced to remain confined to his cell.  In addition, Defendants Morse and Shubert threatened to file false misconduct reports.

Plaintiff does not have an constitutional right to avoid false accusations of misconduct. *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2005) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).  Moreover, Plaintiff has not stated facts from which to infer that the false charges (or threatened charges) violated any specific constitutional rights, such as a right to due process.

### 1.  Due Process

The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Prisoners have a right to due process of law in connection with misconduct proceedings that

implicate a protected interest, but Plaintiff does not claim that he was denied adequate process to challenge the allegedly false charges. *See Zinerman v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.").

Moreover, Plaintiff does not allege that he was deprived of a protected interest. A prisoner's ability to challenge prison misconduct proceedings depends on whether the resulting conviction or sanction implicated a protected liberty interest. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, however, and nor could he. The Sixth Circuit has examined Michigan statutory law as it relates to the creation and forfeiture of disciplinary credits[3] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011);  *Wilson v.*

---

[3] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system.  MICH. COMP. LAWS § 800.33(5).

*Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008) (the loss of disciplinary credits does not implicate a liberty interest).

   Plaintiff claims that Defendants intended to prevent him from obtaining parole, but that claim is unsupported. He does not allege any facts establishing a connection between Defendants' actions and his eligibility for parole. Moreover, even if the misconduct charges (and any resulting convictions) adversely impacted his eligibility for early release on parole, Plaintiff does not have a constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). The Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," has held that the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994); *see also Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). Without a protected interest in parole, Plaintiff cannot claim that any adverse impact on his eligibility for parole deprived him of a protected interest.

Even in the absence of a protected interest implicated by a misconduct charge or conviction, a prisoner may be able to raise a due-process challenge if the charge or conviction causes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Connor*, 515 U.S. 472, 486-87 (1995). Plaintiff has not identified such a hardship. Plaintiff's assertion that he was confined to his cell for an unidentified period of time is not adequate to state a due process claim. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano,* 427 U.S. 215, 225 (1976). Even confinement in segregation is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). For instance, in *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Plaintiff does not allege any details regarding the nature or duration of his confinement from which to infer that it imposed an atypical and significant deprivation.

Plaintiff claims that he lost a prison job as a result of the misconduct charges, but the Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).

-15-

Plaintiff also asserts that he lost access to prison rehabilitative programs, but he does not have a protected interest in access to such programs. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Consequently, Plaintiff does not state a due process claim in connection with the misconduct charges.

### 2. Retaliation

The filing of false misconduct reports might violate a prisoner's constitutional rights if they were filed in retaliation for protected conduct, but as indicated *supra*, Plaintiff does not state a retaliation claim. Consequently, for the foregoing reasons, Plaintiff does not state a claim with respect to the false misconduct reports.

### G.  Cell Searches

Several Defendants allegedly searched Plaintiff's cell. The Fourth Amendment generally prohibits the government from conducting unreasonable searches, but the Supreme Court has held that the Fourth Amendment does not apply to cell searches, because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Thus, the searches ("shakedowns") of Plaintiff's cell did not impinge on his constitutional rights.

### H.  Abusive Speech

Defendants Vollick, Rumstead, Brown, Shaw, Ebert, Knipe, Lacoursiere, Morse, Stuhler and Shubert allegedly gave Plaintiff threatening looks and verbally insulted his appearance, speech and faith.   The use of harassing or degrading language by prison officials, although unprofessional and deplorable, does not rise to constitutional dimensions.   *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir.  Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.");  *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").   Accordingly, Plaintiff fails to state a claim against Defendants arising from the alleged verbal abuse.

## I. Prison Transfer

Deputy Warden Mackie allegedly transferred Plaintiff to another prison, knowing that Plaintiff would be "set up" with a misconduct conviction for possession of a knife. Plaintiff has no constitutional right to placement in a particular prison. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . ."). To the extent Plaintiff contends that the transfer resulted in a misconduct conviction, his allegations are wholly unsupported. He offers no details to support his theory that Defendant Mackie knew that Plaintiff would be "set up" for a misconduct conviction. *See Iqbal*, 556 U.S. at 679 (requiring pleadings that "permit the court to infer more than the mere possibility of misconduct").

## J. Supervisory Liability

Defendant Mackie allegedly refused to hold his subordinates responsible for their alleged acts of retaliation, threats and harassment. In addition, Defendant Woods witnessed unidentified "illegal conduct" by some of the other Defendants and failed to train and supervise them. (Compl., docket #1, Page ID#14.)

As indicated *supra*, Plaintiff does not state a claim against the *other* Defendants for their alleged acts of retaliation, threats and verbal harassment. Consequently, he also does not state a claim against Mackie for failing to prevent such conduct. Furthermore, even if Plaintiff did state a claim against the subordinates, he cannot hold Mackie or Woods liable for failing to train or supervise their subordinates, or for failing to correct their actions. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*,

436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed

constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532

F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of

one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to

act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir.

2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an

administrative grievance or failed to act based upon information contained in a grievance. *See*

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Mackie and

Woods engaged in any active unconstitutional behavior.[4] Thus, he fails to state a claim against him.

### K. Conspiracy

Plaintiff alleges that various Defendants conspired with others to violate his rights.

For instance, Defendants Vollick, Knipe, Lacoursiere, Morse and Shubert were part of a conspiracy

to destroy Plaintiff's personal property and to file false misconduct reports; Deputy Warden Mackie

was part of a "plan of inhumane treatment" and conspired to deny Plaintiff access to the Courts

(Compl., docket #1, Page ID#7); and Defendants Woods, Russel, Schroeder, McLean and Nelson

agreed to retaliate against Plaintiff and to deny him access to the courts.

A civil conspiracy under § 1983 is "an agreement between two or more persons to

injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012)

---

[4]Even if Woods witnessed certain conduct by other Defendants, Plaintiff does not describe what he actually witnessed; thus, the foregoing allegation does not suffice to state a claim against Woods.

(quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's assertions of a conspiracy are unsupported by any allegations demonstrating an agreement to violate his rights.  Consequently, his claim is wholly conclusory.  Furthermore, he does not state a viable conspiracy claim because he has not alleged an agreement that would violate his rights.  His contention that Defendant Mackie agreed to provide inhumane treatment is too vague to support a plausible claim.  His contention that the others conspired to retaliate, destroy his property, file false misconduct reports, and deny him access to the courts is without merit because the underlying claims fail for the reasons stated *supra*.  Thus, Plaintiff fails to state a conspiracy claim against Defendants Knipe, Lacoursiere, Mackie, McLean, Morse, Nelson, Russel, Schroeder, Shubert, Vollick and Woods.[5]

---

[5]Defendants Anderson, Brand, Brontowski, Brown, Ebert, Malletta, Niemi, Rumstead, Shaw and Stuhler were also part of one or more of the alleged conspiracies.  Because the Court will order service of the complaint on these other Defendants with respect to Plaintiff's Eighth Amendment claim, it will allow Plaintiff's conspiracy claims against them to proceed only insofar as they are tied to the failure to provide adequate medical care.

-20-

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Knipe, Lacoursiere, Mackie, McLean, Morse, Nelson, Russel, Schroeder, Shubert, Vollick and Woods will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Anderson, Brand, Brontowski, Brown, Ebert, Malletta, Niemi, Rumstead, Shaw and Stuhler, solely with respect to Plaintiff's Eighth Amendment and conspiracy claims related to the failure to provide adequate medical care.  All other claims against them will be dismissed for failure to state a claim.

An Order consistent with this Opinion will be entered.


Dated:   10/1/2014                           /s/ R. Allan Edgar
                                             R. ALLAN EDGAR
                                             UNITED STATES DISTRICT JUDGE