UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

―――――

MORRIS WEATHERSPOON,
         Plaintiff,                      Case No. 2:14-CV-142
                                             Hon. R. Allan Edgar
v.

JEFFREY WOODS, et al.,
         Defendants.
_____/

## OPINION & ORDER

Plaintiff Morris Weatherspoon, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth and Fourteenth Amendment Rights.[1]  After screening, Plaintiff sues the following Defendants: Dr. Brostoski, Nurse Practitioner (NP) Brand, Physician Assistant (PA) Millette, Sergeant Officer Anderson, Assistant Resident Unit Manager (ARUM) Niemi, Correctional Officer (CO) Brown, CO Shaw, CO Ebert, CO Rumstead, and CO Stuhler.[2]  ECF No. 1 at 1-5; PageID.1-5.  Plaintiff is seeking declaratory relief and punitive damages.

Plaintiff filed a complaint on July 3, 2014, alleging that Defendants acted with deliberate indifference in treating Plaintiff's medical conditions, and that Defendants conspired in doing so.  ECF No. 1.  Defendants Anderson, Brown, Niemi, Shaw, and Stuhler filed a motion for summary judgment on May 5, 2015.  ECF No. 46.  On February 9, 2016, Defendant Ebert was added to this motion for summary judgment (ECF No. 100), to which Plaintiff filed a

―――――――――――

[1]According to this Court's October 1, 2014, Opinion (ECF No. 4), the only remaining claims before this Court are Plaintiff's Eighth Amendment and civil conspiracy claims.  ECF No. 4 at 21.

[2]Defendant Brostoski is deceased.  ECF No. 16.

response on February 24, 2016 (ECF No. 101). Defendants Brand and Millette filed a motion for

summary judgment on May 21, 2015.  ECF No. 55.  Plaintiff filed a response to Defendants'

motions for summary judgment (ECF No. 68) as well as several declarations in support of his

response (ECF No. 69-72, 103).  The matter is now ready for a decision.

The following are the events in question viewed in the light most favorable to

Plaintiff. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31

F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a

summary judgment motion are accepted as true)). On May 17, 2012, Plaintiff claims that

Defendants Shaw, Brown, and Stuhler failed to provide him with dental care as needed.  ECF

No. 1 at 7; PageID.7.  Plaintiff's gums and mouth were swollen and caused him pain as he would

eat and brush his teeth.  *Id*.  Rather than immediately taking him to the dentist, Defendants

confined Plaintiff to his cell. *Id.*

On August 16, 2012, Plaintiff indicated that he had pain in his left leg, which

made it difficult for him to walk, sit, and sleep.  ECF No. 1 at 8; PageID.8.  Instead of taking

Plaintiff to the doctor, Defendants Shaw, Rumstead, Ebert,  Niemi, and Anderson conducted a

one hour search of Plaintiff's cell. *Id.* In addition, on August 16 and 27, 2012, Defendants Brand

and Millette failed to provide medical care for Plaintiff's leg pain once he was brought to the

medical center.  *Id.*

Based on these occurrences, Plaintiff asserts that Defendants conspired against

him by deciding to disregard his obvious need for medical care.  Plaintiff seeks legal redress

before this Court for these alleged violations of his constitutional rights.

I.

Presently before the Court are Defendants' motions for summary judgment,

pursuant to Fed. R. Civ. P. 56.  Because both motions have asked that the Court consider

evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply.

*See* Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes

that there is no genuine issue of material fact for trial and that he is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If

the movant carries the burden of showing there is an absence of evidence to support a claim or

defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers

to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.

*Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts

showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The

evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the

plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad***,** 379

F.3d at 416 (*citing Adams*, 31 F.3d at 382).  However, a mere scintilla of evidence in support of

the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Notably, "[w]hen

opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

that no reasonable jury could believe it, a court could not adopt that version of the facts for the

purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380

(2007). Ultimately, the court must determine whether there is sufficient "evidence on which the

jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996

F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary,

failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d

1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

II.

Defendants argue that Plaintiff's § 1983 claims are barred since Defendants were

not deliberately indifferent in their treatment of Plaintiff on the dates in question.  To state a

claim under § 1983, "a plaintiff must allege the violation of a right secured by the federal

Constitution or laws and must show that the deprivation was committed by a person acting under

color of state law."  *Moore v. Lowe*, No. 1:13-CV-1136, 2014 WL 905840, at \*5 (W.D. Mich.

Mar. 7, 2014) (citing *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *West v.

Atkins*, 487 U.S. 42, 48 (1988)).  "Because § 1983 is a method for vindicating federal rights, not

a source of substantive rights itself, the first step in an action under § 1983 is to identify the

specific constitutional right allegedly infringed."  *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 271

(1994)).

Notably, the parties do not dispute that Defendants were acting under the color of

state law during the events in question, as they were either prison officials or prison medical

personnel at the time.  Therefore, the validity of Plaintiff's claims depends on whether

Defendants violated his constitutional rights.

**A. Eighth Amendment**

Plaintiff claims that Defendants violated his Eighth Amendment rights.  The

Eighth Amendment prohibits the infliction of cruel and unusual punishment against those

convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment's protections are limited

to "deprivations of essential food, medical care, or sanitation [or] other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  For a prisoner to prevail on an Eighth Amendment claim, the prisoner must exemplify that "he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Evans v. Capello*, No. 2:12-CV-135, 2012 WL 1611227, at *4 (W.D. Mich. May 8, 2012) (quoting *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010)).  The Eighth Amendment obligates prison authorities to provide medical care to incarcerated people, and a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004) ("Where the seriousness of a prisoner's need[] for medical care is obvious even to a lay person.")*.*  If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical

treatment." *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical Malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if

the misdiagnosis results in an inadequate course of treatment and considerable suffering.

*Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

### i. Dental Pain

On May 17, 2012, Plaintiff claims that Defendants "Shaw, Brown and Stuhler repeatedly failed to provide plaintiff Morris Weatherspoon with urgent dental care and services." ECF No. 1 at 7; PageID.7. Specifically, Plaintiff stated that he "complained, communicated and told Defendants Brown, Shaw, [and] Stuhler [he] was experiencing sharp and severe pain at tooth no. 26 with obvious signs and or symptoms of gums bleeding, swelling of gums, difficulty sleeping and eating food as Plaintiff also complained about medication, experiencing pain from extraction of tooth no. 25 on Friday, May 11, 2012." ECF No. 68 at 5; PageID.465; *see* ECF No. 1 at 7; PageID.7 (claiming it hurt to eat and brush his teeth). Starting at 6:00 a.m. on May 17, 2012, Plaintiff complained to Defendants about his tooth pain; however, Defendants did not let him go to the dentist until that afternoon. ECF No. 68 at 5; PageID.465. In addition, Plaintiff claims that Defendants told him that "health care been calling over here for you[,] I told them you went to the big yard." ECF No. 69 at 2; PageID.491. Once Plaintiff went to the dentist on May 17th, he claims that the nurses told him that he would have to "endure pain and bear the abuse [of his tooth pain] until Friday May 18, 2012[,] which that [was] the only time a dentist [could] examine Plaintiff." ECF No. 69 at 3; PageID.492. Plaintiff claims that he suffered "disfigurement, disability, worsening and deterioration of [his] health" as a result of Defendants' six hour delay in allowing him to obtain dental care on May 17, 2012. ECF No. 68 at 4 PageID.464.

Under the objective prong of Plaintiff's Eighth Amendment claim, Plaintiff

alleges that Defendants' six hour delay in taking Plaintiff to the dentist caused him to suffer

"disfigurement and disability." ECF No. 68 at 4-5;PageID.464-465. However, aside from these

self-serving conclusory allegations, Plaintiff has not submitted any evidence to support this

assertion. *See Napier*, 238 F.3d at 742 (quoting *Hill v. Dekalb Regional Youth Detention Center*,

40 F.3d 1176, 1188 (11th Cir. 1994) ("An inmate who complains that delay in medical treatment

rose to a constitutional violation must place verifying medical evidence in the record to establish

the detrimental effect of the delay in medical treatment to succeed.")); *see Blackmore*, 390 F.3d

at 898 ("[T]he 'verifying medical evidence' requirement is relevant to those claims involving

minor maladies or non-obvious complaints of a serious need for medical care.").

Moreover, upon review of the evidence of record, it is clear that Plaintiff did not

suffer any serious long or short term harm or "disfigurement" to his teeth or health in general as a

result of his delayed dental visit on May 17, 2012. *See* ECF No. 48 at 3-4; PageID.330-331. For

example, the medical evidence indicates that Dental Assistant Beckie Rosebrock examined

Plaintiff on May 17, 2012, for complaints of tender gums. ECF No. 48 at 3, 6-7; PageID.330,

333-334. She noted that she prescribed Plaintiff ibuprofen and an oral rinse that day, and that an

appointment was scheduled for Plaintiff to see the dentist the following day for a follow-up. *Id.*

The evidence shows that Plaintiff did, in fact, see Dentist Adam Winkler on May 18th because

Plaintiff "had a tooth pulled, [and he] want[ed] to make sure [he didn't] have an infection." ECF

No. 48 at 3; PageID.330. The dentist examined Plaintiff and concluded that Plaintiff did not

have an infection, that Plaintiff was healing well, and that Plaintiff was pleased by the end of the

visit. ECF No. 48 at 4; PageID.331. Clearly, based on this evidence, Plaintiff did not suffer any

serious health problems or facial disfigurement. *See Blackmore*, 390 F.3d at 898 ("[M]edical

proof is necessary to assess whether the delay caused a serious medical injury."). Because

Plaintiff has not shown that any potential delay in dental care on May 17th caused him

sufficiently serious long or short term harm, Plaintiff has not satisfied the objective component of

his Eighth Amendment claim. *Farmer*, 511 U.S. at 834.

       Even if Plaintiff had shown that he suffered serious harm due to a six hour delay

in receiving dental care on May 17th, Plaintiff has not satisfied the subjective prong of his Eighth

Amendment claim. Specifically, Plaintiff has not demonstrated that Defendants were

deliberately indifferent to his need for medical care. *Farmer*, 511 U.S. at 837 (noting defendants

must be "aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists," or that Defendants drew the inference). In fact, the abovementioned medical

evidence directly contradicts Plaintiff's assertion that Defendants Shaw, Brown and Stuhler acted

with deliberate indifference to Plaintiff's need for dental care on May 17th. This is because the

evidence shows that Defendants took Plaintiff that day to see the dental assistant as Plaintiff

requested, and there is no evidence in the record demonstrating that Plaintiff's dental issues were

so severe that immediate attention was necessary. *See Farmer*, 511 U.S. at 835 (noting that

something more than mere negligence needs to be asserted to sustain an Eighth Amendment

claim). Therefore, Plaintiff has not shown that Defendants had the requisite intent to satisfy the

subjective component of his Eighth Amendment claim, and consequently this claim fails.

       **ii. Leg Pain**

       Next, Plaintiff argues that on August 16, 2012, Defendants Shaw, Niemi,

Rumstead, Ebert, and Anderson "repeatedly denied, delayed and disregarded plaintiff's routine,

emergent and urgent care when the need for treatment was obvious and relief was available."

ECF No. 1 at 8; PageID.8.  Specifically, Plaintiff alleges that Defendants prevented him from

accessing a medical provider and x-ray technician. *Id.*; ECF No. 102 at 5, 7-8; PageID. 579, 581-

582.  As a result, Plaintiff claims he unnecessarily suffered intense pain, aches, and discomfort of

his left leg, which made it difficult for him to walk, sit, and sleep.  ECF No. 1 at 8; PageID.8.

       In addition, on August 16 and 27, 2012, Plaintiff claims that Defendants Brand

and Millette "delayed, disregarded and denied plaintiff emergent and urgent medical care" when

he was experiencing leg pain and discomfort when he walked, sat, and slept. *Id.* Plaintiff alleges

that he remains untreated and "subjected to needless pain, suffering, physical injury, mental and

emotional distress" as a result. *Id.*

### a.  Defendants Shaw, Ebert, Niemi, and Anderson

       On August 16, 2012, Plaintiff claims that Defendants Shaw, Ebert, Niemi, and

Anderson intentionally conducted a one hour search of his cell, thereby delaying his ability to

receive medical attention.  ECF No. 68 at 10; PageID.470; ECF No. 102 at 7-8; PageID.581-582.

Plaintiff claims that if Defendants wanted to conduct a search of his cell for one hour while he

was in pain, they could have sent him to the medical center to obtain x-rays while they conducted

a cell search.  ECF No. 68 at 11; PageID.471. Since this was not done, Plaintiff claims that his

delay in obtaining x-rays and general medical attention caused his health to deteriorate. *Id.*

       Under the objective prong of his Eighth Amendment claim (whether Plaintiff

suffered a serious harm), Plaintiff has not demonstrated that the one hour delay in obtaining

medical treatment due to Defendants Shaw, Ebert, Niemi, and Anderson's one hour cell search

caused him serious or detrimental harm.  *Farmer*, 511 U.S. at 834.  As previously mentioned,

"[a]n inmate who complains that delay in medical treatment rose to a constitutional violation

must place verifying medical evidence in the record to establish the detrimental effect of the

delay in medical treatment to succeed." *Napier*, 238 F.3d at 742 (quoting *Hill*, 40 F.3d at 1188).

Aside from his own conclusory allegations and subjective interpretations of his mental condition,

Plaintiff has not provided any medical evidence to support his claim that he suffered a serious

harm due to any potential delay in medical treatment on August 16, 2012.  *Whitley v. Spencer*

*Cnty. Police Det.*, 178 F.3d 1298 (Table), 1999 WL 196499, at *3 (6th Cir. 1999)   (noting

plaintiff could not demonstrate "serious harm" for the objective prong of an Eighth Amendment

claim when "the objective medical evidence contradicts plaintiff's self-serving [declarations] and

conclusory allegations.").

    Rather, the medical evidence from August 16, 2012, shows that

Plaintiff did not suffer serious harm due to any delay in medical treatment.  For example,

Defendant Brand noted in his chart that he saw Plaintiff on August 16, at which time Plaintiff

was being seen for a "lump in his leg that [was] causing some numbness that he [was] sure [was]

a sign of a heart attack or stroke."  ECF No. 48 at 9; PageID.336.  Defendant Brand examined

Plaintiff, noted that overall he was in good health except for the symptoms he complained of in

his leg, and then ordered an x-ray exam of his left thigh.  ECF No. 48 at 8-9; PageID.335-336.  In

addition, Defendant Brand told Plaintiff that he was not having a heart attack, which relieved

him.  ECF No. 48 at 10-12; PageID.337-339. Two days later, the medical records show that

Plaintiff's left leg was x-rayed, and upon review of the results, Dr. Henderson concluded that the

lump in his leg was representative of an "old healed trauma."  ECF No. 48 at 14-16; PageID.341-

343; ECF No. 102-1 at 16; PageID.600 (noting the same findings in November 2012).  Dr.

Henderson also noted that Plaintiff was walking, sitting, and standing with ease. ECF No. 48 at

14-16; PageID.341-343. Overall, the medical evidence clearly indicates that Plaintiff was not suffering from a serious injury that could have worsened due to an hour delay in treatment on August 16, 2012. As a result, Plaintiff has not satisfied the objective component of his Eighth Amendment claim.

However, even if he had, Plaintiff has not satisfied the subjective component.  To satisfy this prong, Plaintiff must show that  Defendants acted with "a sufficiently culpable state of mind in denying [him] medical care." *Brown*, 207 F.3d at 867 (citing *Farmer*, 511 U.S. at 834).  Aside from his conclusory allegations, Plaintiff has not provided any evidence to satisfy this prong.

Moreover, the medical evidence of record contradicts Plaintiff's deliberate indifference claim by showing that Defendants acted *with* due diligence and care on August 16, 2012.  For example, the August 16th medical records show that Plaintiff was seen at or before 3:19 p.m., and that follow-up appointments were scheduled for him later in the week (which Plaintiff did, in fact, attend).  ECF No. 48 at 8-15; PageID.335-342.  Therefore, Plaintiff has not demonstrated that Defendants denied him medical treatment on August 16, 2012.  *See Martin v. Zych*, Civil No. 5:09-CV-12724, 2009 WL 2602280, at *2 (E.D. Mich. Aug. 21, 2009) (citing *Parker v. Mich. Dep't of Corrs.*, 65 Fed. App'x 922, 923 (6th Cir. 2003) ("Conclusory allegations by a prisoner of medical indifference on the part of prison officials is insufficient to state a claim for relief.")).  As such, this claim fails.

### b. Defendant Brand

In addition, on August 16, 2012, Plaintiff claims that Defendant Brand failed to provide Plaintiff with "urgent medical care," and that he has continued to suffer "needless pain"

and suffering as a result of her decision not to treat Plaintiff's leg condition.  ECF No. 1 at 8;

PageID.8.  Specifically, Plaintiff claims that Defendant Brand misdiagnosed him by stating that

his leg lump was an "old healed trauma."  ECF No. 68 at 12; PageID.472.  Plaintiff states that

Defendant Brand was aware of his leg condition and that she should have known that Plaintiff

needed x-rays and pain relief medication immediately on August 16, 2012.  ECF No. 68 at 12-13;

PageID.472-473.  As a result, Plaintiff alleges that he unnecessarily continued to suffer sharp

pain in his leg when he walked and tried to sleep.  ECF No. 68 at 12; PageID.472.  Moreover,

Plaintiff claims that this misdiagnosis has resulted in no biopsy of his leg being done, which

means that cancer cannot be ruled out as a possible condition in his leg.  ECF No. 68 at 14;

PageID.474.

            Again, Plaintiff has not satisfied the objective prong of his Eighth Amendment

claim by showing that his leg pain was sufficiently serious, or that his alleged misdiagnosis

caused him serious harm.  The evidence of record shows that Plaintiff's leg lump was an "old

healed trauma." ECF No. 48 at 16; PageID.476.  This conclusion was made after x-rays were

conducted on Plaintiff's leg and then evaluated by medical professionals.  *Id.*  Differences in

judgment between an inmate and prison medical personnel regarding appropriate medical

diagnoses does not amount to a deliberate indifference claim.  *Sanderfer*, 62 F.3d at 154-55.  In

addition, in cases involving such a minor malady, as here (i.e., an old healed leg trauma),

Plaintiff would have had to place medical evidence in the record to show that his condition was

actually serious; however, Plaintiff has not done so.  *Napier*, 238 F.3d at 742 (noting the inmate

must "place verifying medical evidence in the record to establish the detrimental effect of the

delay in medical treatment.").  As a result, Plaintiff has not satisfied the objective prong of his

Eighth Amendment claim against Defendant Brand.

Moreover, Plaintiff has not demonstrated, under the subjective component, that Defendant Brand had "a sufficiently culpable state of mind in denying [Plaintiff] medical care." *Brown*, 207 F.3d at 867 (citing *Farmer*, 511 U.S. at 834). In fact, the evidence shows that Defendant Brand provided thorough medical care to Plaintiff based on his complaints on August 16, 2012. For example, on August 16th, Plaintiff's medical records show that he was seen by Defendant Brand because Plaintiff feared that the pain in his leg was caused by a heart attack or stroke. ECF No. 57-1 at 8; PageID.404. However, after evaluating Plaintiff and conferring with Dr. Brostoski, Defendant Brand confirmed that Plaintiff was not suffering from either of those conditions. ECF No. 48 at 8-10; PageID.335-337; ECF No. 57-1 at 9; PageID.405. Moreover, Defendant Brand conducted follow-up examinations of Plaintiff and inquired whether Plaintiff had sustained an injury to his knee recently, to which Plaintiff replied he did not. ECF No. 55-4 at 4; PageID.385 (Declaration by NP Brand). Defendant Brand noted that Plaintiff had a "firm calcified area proximal to knee," so she ordered an x-ray of Plaintiff's left leg and told Plaintiff she would go over the results of the x-ray with him when the results returned. ECF No. 48 at 8-10; PageID.335-337; ECF No. 57-1 at 9; PageID.405. Her report indicates that Plaintiff was relieved by the end of his visit on August 16, 2012. ECF No. 57-1 at 9; PageID.405. Clearly, Defendant Brand did not deny medical treatment to Plaintiff, or have a culpable state of mind when she treated Plaintiff on August 16, 2012. Rather, the medical records show that she appropriately and professionally treated Plaintiff that day: i.e., she conducted a physical exam, ordered x-rays, conferred with Plaintiff about follow-up appointments, and Plaintiff was subsequently seen at those follow-up appointments regarding his leg pain. *See Santiago v.*

*Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (noting even "[w]hen a prison doctor provides

treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate

indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to

the level of a constitutional violation.") (citation omitted). Therefore, Plaintiff has not satisfied

the subjective component of this Eighth Amendment claim.

To the extent that Plaintiff is claiming that he did not agree with Defendant

Brand's course of medical treatment, this is not enough to state a claim under the Eighth

Amendment. *Sanderfer*, 62 F.3d at 154-55; *Ward*, 1996 WL 627724, at *1. This is so even if

the course treatment results in a misdiagnosis that results in considerable suffering. *Gabehart*,

1997 WL 160322, at *2. Therefore, Plaintiff has not demonstrated that Defendant Brand was

deliberately indifferent to his medical needs on August 16, 2012, and consequently this claim

fails.

### c. *Defendant Millette*

Similarly, on August 27, 2012, Plaintiff claims that Defendant Millette knew of

his leg pain, knew that he had not undergone x-rays or been prescribed pain relief medication for

his leg pain, and knew that Plaintiff had not had a biopsy of his leg done at that point. ECF No.

68 at 15; PageID.475. Plaintiff states that even though he told Defendant Millette that his leg

hurt while walking and sleeping, Defendant Millette improperly noted in his chart that Plaintiff

did not present any difficulty walking, sitting, or standing, and that he had full range of motion of

his leg. ECF No. 68 at 16; PageID.476. Moreover, Plaintiff states that he had been requesting

surgical care from Defendant Millette since July of 2012, but x-rays were not scheduled for him

until August. ECF No. 71 at 2. In addition, Plaintiff believes he should have seen a specialist

immediately in order to rule out any cancer scares.  ECF No. 68 at 16-17; PageID.476-477.

Plaintiff claims that based on Defendant Millette's improper course of treatment, he still suffers

from a "serious chronic illness" that has inflicted him with "sharp and severe pain, discomfort

and restriction of [his] left femur."  ECF No. 71 at 3; PageID.498.

Regardless of whether Plaintiff satisfied the objective prong of this Eighth

Amendment claim, he has not satisfied the subjective prong.  The medical records show that

Defendant Millette did not intentionally deny Plaintiff medical care.  *See Brown*, 207 F.3d at 867

(citing *Farmer*, 511 U.S. at 834).  For instance, the records indicate that Plaintiff was seen by

Defendant Millette for complaints of leg pain during one of Plaintiff's regularly scheduled

appointments on August 27, 2012.  ECF No. 57-1 at 15; PageID.411; ECF No. 55-3 at 6;

PageID.380 (Declaration by PA Millette).  At that time, Defendant Millette noted that Plaintiff,

"walked without a limp, but had a bony cyst on his left thigh." ECF No. 55-3 at 6; PageID.380;

ECF No. 57-1 at 15; PageID.411.  Prior to that day, Plaintiff had been requesting use of a cane,

but on August 27, 2012, Defendant Millette informed Plaintiff that a cane was not necessary

based on his examination of Plaintiff's condition.  *Id.*  In addition, Defendant Millette conferred

with Dr. Brostoski about Plaintiff's leg, and they decided to conduct a biopsy of Plaintiff's cyst

to rule out any pathological causes of the cyst.  *Id.*  Defendant Millette also prescribed him

Motrin for any pain that day (sixty tablets per month on a take-as-needed basis).  *Id.*  However,

later on August 27, 2012, in response to Defendant Millette's consultation request, Dr. Squier

noted that a biopsy was not necessary in Plaintiff's case since no bone cyst was visible on the x-

ray.  *Id.*  Instead, Dr. Squier recommended that Plaintiff be x-rayed again in a month if his

symptoms persisted.  *Id*.

Given this thorough course of treatment and follow-up, it is clear that Defendant Millette did not intentionally deny Plaintiff medical care.  Rather, Defendant Millette's treatment plan was thorough and complete.  *See Santiago*, 734 F.3d at 591 (noting even carelessness or incompetence in treating a prisoner does not suffice for an Eighth Amendment deliberate indifference claim).  Even though Plaintiff disagrees with the course of his treatment, this is insufficient to sustain a claim of deliberate indifference.  *Sanderfer*, 62 F.3d at 154-55 (noting it is well established that differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim); *Ward*, 1996 WL 627724, at *1.  Consequently, Plaintiff has failed to show that he suffered a constitutional violation based on the treatment Defendant provided him on August 27, 2012.  Thus, this claim fails.

## B. Civil Conspiracy

Plaintiff's final claim is that several of the Defendants "agreed to join the plan of deliberate indifference to plaintiff Morris Weatherspoon['s] serious medical needs," which Plaintiff claims violated his constitutional rights and constituted cruel and unusual punishment since this conspiracy has caused him "pain, suffering, physical injury, [and] mental and emotional distress."  ECF No. 1 at 12; PageID.12.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  Based on the discussion in the previous section, it is clear that Defendants did not engage in any unlawful actions against Plaintiff.  Specifically, Defendants were not deliberately indifferent to Plaintiff's health needs

since Plaintiff was seen by dental staff and medical professionals on May 17, August 16, and August 27, 2012.  Accordingly, Defendants did not agree to ignore Plaintiff's need for medical attention in May or August of 2012.  As a result, this claim fails.

In addition, Plaintiff raised two new claims of conspiracy for the first time in his responses to Defendant Ebert's motion for summary judgment (ECF No. 100).  The first conspiracy claim is that "the plaintiff was actually 'set up' with a[n] 8 inch knife approximately 30 days on Sunday, September 16, 2012."  ECF No. 102 at 7; PageID.581.  The second is that "there is a link to the attempt[ed] murder and sexual assault conspired by the defendants and CCF prison officials who are trying to cover up and conceal this attempt murder and plans to subject plaintiff to a[n] ongoing danger and imminent danger."  ECF No. 103 at 2; PageID.624. Plaintiff has not provided any evidence to support these conclusory allegations.  *See Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("Claims of [civil] conspiracy must be pled with some specificity: vague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim.")). For example, Plaintiff has not indicated who is involved in these conspiracies, how many people were involved, or when these conspiracies occurred.  As a result, these two new claims for civil conspiracy fail as well.

### III.

Overall, despite the Court's obligation to construe handwritten *pro se* documents liberally, Plaintiff's § 1983 fails.  Fed. R. Civ. P. 56; *see Estelle*, 429 U.S. at 106; *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and will only be dismissed if the claim

undoubtedly contains no facts to support its request for relief).  Accordingly, Defendants'

Motions for Summary Judgment are appropriate.

In light of the foregoing, this Court concludes that Defendants' Motions for

Summary Judgment (ECF No. 46, 55, 100) are **GRANTED** and this case will be dismissed with

prejudice in its entirety.  In addition, Defendant Rumstead was not served in this case, and as

such the claims against him are dismissed.  ECF No. 21. Moreover, Plaintiff's "Motion for the

USDC and USMS to Respond to Questions" (ECF No. 98) and "Motion to Strike" (ECF No.

101) are denied as moot.  An Order and Judgment consistent with this Opinion will be entered.

**SO ORDERED**.


Date: _2/25/2016___                                         __/s/ *R. Allan Edgar*_____
                                                            R. ALLAN EDGAR
                                                            UNITED STATES DISTRICT JUDGE